

## The University of the State of New York

**The State Education Department**
State Review Officer
www.sro.nysed.gov

No. 21-048

**Application of a STUDENT WITH A DISABILITY, by his parent, for review of a determination of a hearing officer relating to the provision of educational services by the Board of Education of the Ardsley Union Free School District**

**Appearances:**
Jaspan Schlesinger LLP, attorneys for respondent, by Carol A. Melnick, Esq.

### DECISION

### I. Introduction

This proceeding arises under the Individuals with Disabilities Education Act (IDEA) (20 U.S.C. §§ 1400-1482) and Article 89 of the New York State Education Law. Petitioner (the parent) appeals from the decision of an impartial hearing officer (IHO) which denied her request for compensatory education. The appeal must be dismissed.

### II. Overview—Administrative Procedures

When a student in New York is eligible for special education services, the IDEA calls for the creation of an individualized education program (IEP), which is delegated to a local Committee on Special Education (CSE) that includes, but is not limited to, parents, teachers, a school psychologist, and a district representative (Educ. Law § 4402; see 20 U.S.C. § 1414[d][1][A]-[B]; 34 CFR 300.320, 300.321; 8 NYCRR 200.3, 200.4[d][2]). If disputes occur between parents and school districts, incorporated among the procedural protections is the opportunity to engage in mediation, present State complaints, and initiate an impartial due process hearing (20 U.S.C. §§ 1221e-3, 1415[e]-[f]; Educ. Law § 4404[1]; 34 CFR 300.151-300.152, 300.506, 300.511; 8 NYCRR 200.5[h]-[*l*]).

New York State has implemented a two-tiered system of administrative review to address disputed matters between parents and school districts regarding "any matter relating to the identification, evaluation or educational placement of a student with a disability, or a student

suspected of having a disability, or the provision of a free appropriate public education to such student" (8 NYCRR 200.5[i][1]; see 20 U.S.C. § 1415[b][6]-[7]; 34 CFR 300.503[a][1]-[2], 300.507[a][1]).  First, after an opportunity to engage in a resolution process, the parties appear at an impartial hearing conducted at the local level before an IHO (Educ. Law § 4404[1][a]; 8 NYCRR 200.5[j]).  An IHO typically conducts a trial-type hearing regarding the matters in dispute in which the parties have the right to be accompanied and advised by counsel and certain other individuals with special knowledge or training; present evidence and confront, cross-examine, and compel the attendance of witnesses; prohibit the introduction of any evidence at the hearing that has not been disclosed five business days before the hearing; and obtain a verbatim record of the proceeding (20 U.S.C. § 1415[f][2][A], [h][1]-[3]; 34 CFR 300.512[a][1]-[4]; 8 NYCRR 200.5[j][3][v], [vii], [xii]).  The IHO must render and transmit a final written decision in the matter to the parties not later than 45 days after the expiration period or adjusted period for the resolution process (34 CFR 300.510[b][2], [c], 300.515[a]; 8 NYCRR 200.5[j][5]).  A party may seek a specific extension of time of the 45-day timeline, which the IHO may grant in accordance with State and federal regulations (34 CFR 300.515[c]; 8 NYCRR 200.5[j][5]).  The decision of the IHO is binding upon both parties unless appealed (Educ. Law § 4404[1]).

A party aggrieved by the decision of an IHO may subsequently appeal to a State Review Officer (SRO) (Educ. Law § 4404[2]; see 20 U.S.C. § 1415[g][1]; 34 CFR 300.514[b][1]; 8 NYCRR 200.5[k]).  The appealing party or parties must identify the findings, conclusions, and orders of the IHO with which they disagree and indicate the relief that they would like the SRO to grant (8 NYCRR 279.4).  The opposing party is entitled to respond to an appeal or cross-appeal in an answer (8 NYCRR 279.5).  The SRO conducts an impartial review of the IHO's findings, conclusions, and decision and is required to examine the entire hearing record; ensure that the procedures at the hearing were consistent with the requirements of due process; seek additional evidence if necessary; and render an independent decision based upon the hearing record (34 CFR 300.514[b][2]; 8 NYCRR 279.12[a]).  The SRO must ensure that a final decision is reached in the review and that a copy of the decision is mailed to each of the parties not later than 30 days after the receipt of a request for a review, except that a party may seek a specific extension of time of the 30-day timeline, which the SRO may grant in accordance with State and federal regulations (34 CFR 300.515[b], [c]; 8 NYCRR 200.5[k][2]).

### III. Facts and Procedural History

The parties' familiarity with the detailed facts and procedural history of this case and the IHO's decision is presumed and will not be recited here.  For the most recent school year at issue in this matter and prior to the student's graduation in June 2020, the CSE convened on November 21, 2019, to review the results of a behavioral evaluation that had been ordered for the student in a previous impartial hearing and to review, formulate, and modify the student's IEP for the remainder of the 2019-20 school year (see generally IHO Ex. III, Attachment 3 at pp. 2-17; Application of a Student with a Disability, Appeal No. 19-053).  The November 2019 IEP provided the student with daily resource room services and counseling services twice weekly in a general education program, among other special education supports and services (see IHO Ex. III, Attachment 3 at p. 2).  The student completed the requirements for a Regents diploma at the close of the 2019-20 school year and was graduated from the district's high school in June 2020 (see Dist. Ex. 1, Attachment 3; IHO Ex. III, Attachment 5).

In a due process complaint notice dated June 4, 2020, the parent alleged that the district failed to offer the student a free appropriate public education (FAPE) for the 2017-18, 2018-19, and 2019-20 school years (see Parent Ex. A). The primary claims concerning the school years at issue were the failure to properly implement the student's IEPs and develop and implement a behavioral intervention plan (id.). The parent amended her due process complaint notice on September 14, 2020 (Parent Ex. B). Thereafter, the parent initiated a second due process hearing in a due process complaint notice dated November 17, 2020, which by its wording also sought to amend the June 4, 2020 due process complaint notice and added claims concerning the 2020-21 school year (see Parent Ex. C at pp. 1-2; 21). In a decision dated December 12, 2020, both impartial hearings commenced by the parent on behalf of the student during the time period between June and November 2020 were consolidated into a single proceeding (see IHO Ex. VIII).

An impartial hearing convened on October 9, 2020 for a pre-hearing conference during which the parties discussed a motion from the parent for pendency and a motion by the district to dismiss the matter (Tr. pp. 1-84). Extensive written argument and motion practice from the parent and the district followed, which included the parent's motion for pendency services and memorandum of law dated November 13, 2020 (IHO Ex. IV); the district's motion to dismiss dated November 13, 2020 (IHO Ex. III); the parent's reply to the school district's motion to dismiss dated November 20, 2020 (IHO Ex. VI); the district's reply to the parent's motion for pendency services dated November 20, 2020 (IHO Ex. V); and finally, the district's response to the parent's November 17, 2020 due process complaint notice dated November 30, 2020 (Dist. Ex. 2).

In a decision dated December 31, 2020, the IHO granted the district's motion to dismiss the parent's claims for each of the school years at issue on the ground that the claims were moot because the student had graduated from the district and was no longer eligible for special education services, and would also not be due to receive continued eligibility and/or compensatory education because there had been no gross violation of the student's right to a FAPE (IHO Decision at pp. 19-22). The IHO addressed a related claim in the district's motion to dismiss the parent's claims with respect to the 2017-18 school year, granting dismissal of the claims upon a finding that they were barred by the doctrine of res judicata and collateral estoppel because the claims had been adjudicated in a prior matter and State-level review and were additionally barred by the statute of limitations (id. at pp. 13-18; see Application of a Student with a Disability, Appeal No. 19-053). The IHO also addressed the question of the student's placement during the pendency of the proceedings herein, and found that although the student was no longer eligible for IDEA services from the district, there was some case law suggesting that a claim that the student had been improperly graduated by the district may be grounds for a pendency ruling and placement determination (see IHO Decision at pp. 22-27). If that were the case, the IHO reasoned that the November 2019 IEP calling for a general education program with related services at the district's high school was the student's last agreed-upon placement and would constitute pendency, rather than the "operative placement" sought by the parent consisting of a suite of private services and classes the parent obtained for the student after the close of the 2019-20 school year (id.).

## IV. Appeal for State-Level Review

The parties' familiarity with the particular issues for review on appeal in the district's petition for review and the parent's answer thereto is also presumed and will not be recited here. The central issue of the parties' dispute on appeal is whether the student was properly and

appropriately graduated from the district with a Regents diploma in June 2020, and if so, whether that status rendered the parent's claims and requested relief moot in light of the student's ineligibility for special education services from the district under the IDEA. Secondarily, there is also a dispute over what constitutes the student's pendency placement, if any, in this matter.

## V. Applicable Standards

Two purposes of the IDEA (20 U.S.C. §§ 1400-1482) are (1) to ensure that students with disabilities have available to them a FAPE that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living; and (2) to ensure that the rights of students with disabilities and parents of such students are protected (20 U.S.C. § 1400[d][1][A]-[B]; see generally Forest Grove Sch. Dist. v. T.A., 557 U.S. 230, 239 [2009]; Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 206-07 [1982]).

A FAPE is offered to a student when (a) the board of education complies with the procedural requirements set forth in the IDEA, and (b) the IEP developed by its CSE through the IDEA's procedures is reasonably calculated to enable the student to receive educational benefits (Rowley, 458 U.S. at 206-07; T.M. v. Cornwall Cent. Sch. Dist., 752 F.3d 145, 151, 160 [2d Cir. 2014]; R.E. v. New York City Dep't of Educ., 694 F.3d 167, 189-90 [2d Cir. 2012]; M.H. v. New York City Dep't of Educ., 685 F.3d 217, 245 [2d Cir. 2012]; Cerra v. Pawling Cent. Sch. Dist., 427 F.3d 186, 192 [2d Cir. 2005]). "'[A]dequate compliance with the procedures prescribed would in most cases assure much if not all of what Congress wished in the way of substantive content in an IEP'" (Walczak v. Fla. Union Free Sch. Dist., 142 F.3d 119, 129 [2d Cir. 1998], quoting Rowley, 458 U.S. at 206; see T.P. v. Mamaroneck Union Free Sch. Dist., 554 F.3d 247, 253 [2d Cir. 2009]). The Supreme Court has indicated that "[t]he IEP must aim to enable the child to make progress. After all, the essential function of an IEP is to set out a plan for pursuing academic and functional advancement" (Endrew F. v. Douglas Cty. Sch. Dist. RE-1, 580 U.S. __, 137 S. Ct. 988, 999 [2017]). While the Second Circuit has emphasized that school districts must comply with the checklist of procedures for developing a student's IEP and indicated that "[m]ultiple procedural violations may cumulatively result in the denial of a FAPE even if the violations considered individually do not" (R.E., 694 F.3d at 190-91), the Court has also explained that not all procedural errors render an IEP legally inadequate under the IDEA (M.H., 685 F.3d at 245; A.C. v. Bd. of Educ. of the Chappaqua Cent. Sch. Dist., 553 F.3d 165, 172 [2d Cir. 2009]; Grim v. Rhinebeck Cent. Sch. Dist., 346 F.3d 377, 381 [2d Cir. 2003]). Under the IDEA, if procedural violations are alleged, an administrative officer may find that a student did not receive a FAPE only if the procedural inadequacies (a) impeded the student's right to a FAPE, (b) significantly impeded the parents' opportunity to participate in the decision-making process regarding the provision of a FAPE to the student, or (c) caused a deprivation of educational benefits (20 U.S.C. § 1415[f][3][E][ii]; 34 CFR 300.513[a][2]; 8 NYCRR 200.5[j][4][ii]; Winkelman v. Parma City Sch. Dist., 550 U.S. 516, 525-26 [2007]; R.E., 694 F.3d at 190; M.H., 685 F.3d at 245).

The IDEA directs that, in general, an IHO's decision must be made on substantive grounds based on a determination of whether the student received a FAPE (20 U.S.C. § 1415[f][3][E][i]). A school district offers a FAPE "by providing personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction" (Rowley, 458 U.S. at 203). However, the "IDEA does not itself articulate any specific level of educational benefits that

4

must be provided through an IEP" (Walczak, 142 F.3d at 130; see Rowley, 458 U.S. at 189). "The adequacy of a given IEP turns on the unique circumstances of the child for whom it was created" (Endrew F., 137 S. Ct. at 1001). The statute ensures an "appropriate" education, "not one that provides everything that might be thought desirable by loving parents" (Walczak, 142 F.3d at 132, quoting Tucker v. Bay Shore Union Free Sch. Dist., 873 F.2d 563, 567 [2d Cir. 1989] [citations omitted]; see Grim, 346 F.3d at 379). Additionally, school districts are not required to "maximize" the potential of students with disabilities (Rowley, 458 U.S. at 189, 199; Grim, 346 F.3d at 379; Walczak, 142 F.3d at 132). Nonetheless, a school district must provide "an IEP that is 'likely to produce progress, not regression,' and . . . affords the student with an opportunity greater than mere 'trivial advancement'" (Cerra, 427 F.3d at 195, quoting Walczak, 142 F.3d at 130 [citations omitted]; see T.P., 554 F.3d at 254; P. v. Newington Bd. of Educ., 546 F.3d 111, 118-19 [2d Cir. 2008]). The IEP must be "reasonably calculated to provide some 'meaningful' benefit" (Mrs. B. v. Milford Bd. of Educ., 103 F.3d 1114, 1120 [2d Cir. 1997]; see Endrew F., 137 S. Ct. at 1001 [holding that the IDEA "requires an educational program reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances"]; Rowley, 458 U.S. at 192). The student's recommended program must also be provided in the least restrictive environment (LRE) (20 U.S.C. § 1412[a][5][A]; 34 CFR 300.114[a][2][i], 300.116[a][2]; 8 NYCRR 200.1[cc], 200.6[a][1]; see Newington, 546 F.3d at 114; Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105, 108 [2d Cir. 2007]; Walczak, 142 F.3d at 132).

An appropriate educational program begins with an IEP that includes a statement of the student's present levels of academic achievement and functional performance (see 34 CFR 300.320[a][1]; 8 NYCRR 200.4[d][2][i]), establishes annual goals designed to meet the student's needs resulting from the student's disability and enable him or her to make progress in the general education curriculum (see 34 CFR 300.320[a][2][i], [2][i][A]; 8 NYCRR 200.4[d][2][iii]), and provides for the use of appropriate special education services (see 34 CFR 300.320[a][4]; 8 NYCRR 200.4[d][2][v]).[1]

A board of education may be required to reimburse parents for their expenditures for private educational services obtained for a student by his or her parents, if the services offered by the board of education were inadequate or inappropriate, the services selected by the parents were appropriate, and equitable considerations support the parents' claim (Florence County Sch. Dist. Four v. Carter, 510 U.S. 7 [1993]; Sch. Comm. of Burlington v. Dep't of Educ., 471 U.S. 359, 369-70 [1985]; R.E., 694 F.3d at 184-85; T.P., 554 F.3d at 252). In Burlington, the Court found that Congress intended retroactive reimbursement to parents by school officials as an available remedy in a proper case under the IDEA (471 U.S. at 370-71; see Gagliardo, 489 F.3d at 111; Cerra, 427 F.3d at 192). "Reimbursement merely requires [a district] to belatedly pay expenses that it should have paid all along and would have borne in the first instance" had it offered the student a FAPE (Burlington, 471 U.S. at 370-71; see 20 U.S.C. § 1412[a][10][C][ii]; 34 CFR 300.148).

---

[1] The Supreme Court has stated that even if it is unreasonable to expect a student to attend a regular education setting and achieve on grade level, the educational program set forth in the student's IEP "must be appropriately ambitious in light of his [or her] circumstances, just as advancement from grade to grade is appropriately ambitious for most children in the regular classroom. The goals may differ, but every child should have the chance to meet challenging objectives" (Endrew F., 137 S. Ct. at 1000).

5

The burden of proof is on the school district during an impartial hearing, except that a parent seeking tuition reimbursement for a unilateral placement has the burden of proof regarding the appropriateness of such placement (Educ. Law § 4404[1][c]; see R.E., 694 F.3d at 184-85).

**VI. Discussion**

**A. Regents Diploma and Mootness**

As a threshold matter, I must address the parent's assertion that the IHO erred in ruling on the issue of mootness for every school year at issue, because in her view the parties had been directed to brief only the question of res judicata and limitations for the 2017-18 school year and, therefore, she had no opportunity to argue the question of graduation and mootness for the case in general. However, a review of the hearing record does not support the parent's position on this issue. During the prehearing conference, the parties discussed the question of whether the student's graduation from the district would affect his eligibility for any future IDEA services, and the IHO asked the parties to address the impact of two cases on the student's eligibility for special education services from the district (Tr. pp. 18-20, 24-25, 49-53). The first case, Cronin v. E. Ramapo Cent. Sch. Dist. (689 F. Supp. 197, [S.D.N.Y. 1988]), found that stay put continued after the district graduated a student because the parents therein contended that that student had not attained the recommended targets established for him in the educational program. The second case the IHO wanted the parties to consider, T.M. v. Kingston City Sch. Dist. (891 F. Supp. 2d 289, 294-95 [N.D.N.Y. 2012]), held, among other things, that the SRO in that matter had correctly determined that the student therein had earned a Regents diploma, thereby ending the school district's obligation to provide him with a FAPE (see Tr. pp. 49-51). After the prehearing conference, the district, in its motion to dismiss, contended that the student had earned a Regents diploma in June 2020, therefore ending the district's obligation to provide him with any further free public education (IHO Ex. III at pp. 3-5). The parent thereafter was on notice of the district's claim that the parent's due process complaint notices should be dismissed for all school years at issue and had an opportunity to respond to that claim. In her responsive brief to the district's motion to dismiss, the parent responded to the district's claim, arguing that the question of whether the student was properly graduated remained at issue, such that the student remained eligible for services under a pendency placement (see IHO Ex. VI at pp. 13-17).

The parent claims that the district should not have graduated the student at the close of the 2019-20 school year, arguing that at an April 2020 exit summary meeting the district predetermined that the student should be graduated, although he had been in danger of failing a class due to not handing in required work, and that the June 2020 filing of the due process complaint notice commencing this matter should have caused the district to refrain from graduating the student. The parent asserts this constituted a gross denial of a FAPE. The district contends that the student was an excellent scholar who met the requirements for a Regents diploma with the aid of the services on his IEP, and that he was properly graduated in June 2020. For the reasons set forth below, I find that the hearing record supports finding that the student graduated in June 2020 and was not subject to a gross denial of FAPE, rendering the parent's claims for compensatory education for the district's denial of a FAPE moot.

In New York State, a student who is eligible as a student with a disability may continue to obtain services under the IDEA until he or she receives either a local or Regents high school

diploma (Educ. Law §§ 3202[1]; 4402[1][b][5]; 34 CFR 300.102[a][3][i]; 8 NYCRR 100.5[b][7][iii]), or until the conclusion of the ten-month school year in which he or she turns age 21 (Educ. Law §§ 3202[1]; 4401[1]; 4402[5][b]; 8 NYCRR 100.9[e], 200.1[zz]; see 34 CFR 300.102[a][1], [a][3][ii]).  Here, the student's eligibility for special education programs and related services as a student with a disability ended upon his graduation in June 2020 and, there was no gross violation of the IDEA resulting in the denial of, or exclusion from, educational services for a substantial period of time, thus, the student would not be entitled to compensatory education thereafter (French v. New York State Dep't of Educ., 476 Fed. App'x 468, 471-72 [2d Cir. 2011]; see Somoza v. New York City Dep't of Educ., 538 F.3d 106, 109 n.2 [2d Cir. 2008] [an award of compensatory education "beyond the expiration of a child's eligibility . . . is appropriate only for gross violations of the IDEA"];  Garro v. State of Conn., 23 F.3d 734, 737 [2d Cir. 1994]; Mrs. C. v. Wheaton, 916 F.2d 69 [2d Cir. 1990]; Burr v. Ambach, 863 F.2d 1071 [2d Cir. 1988]; Cosgrove v. Bd. of Educ., 175 F. Supp. 2d 375, 387 [N.D.N.Y. 2001]).  In addition, given the fact that graduation and receipt of a high school diploma are generally considered to be evidence of educational benefit (Pascoe v. Washington Cent. Sch. Dist., 1998 WL 684583, at *4, *6 [S.D.N.Y. Sept. 29, 1998]; see also Rowley, 458 U.S. at 207 n.28; Walczak v. Fla. Union Free Sch. Dist., 142 F.3d 119, 130 [2d Cir. 1998]), the receipt of which terminates a student's entitlement to a FAPE (34 CFR 300.102[a][3][i]; 8 NYCRR 100.5[b][7][iii]; 200.4[i]), when taken together with the Second Circuit's standard requiring a gross violation of the IDEA during the student's period of eligibility (see Garro, 23 F.3d at 737; Mrs. C., 916 F.2d at 75), it is a rare case where a student will graduate with a high school diploma and yet still qualify for an award of compensatory education (see, e.g., Application of a Student with a Disability, Appeal No. 13-215; Application of a Student with a Disability, Appeal No. 13-110; Application of a Student with a Disability, Appeal No. 11-159).

A dispute between parties must at all stages be "real and live," and not "academic," or it risks becoming moot (Lillbask v. State of Conn. Dep't of Educ., 397 F.3d 77, 84 [2d Cir. 2005]; see Toth v. New York City Dep't of Educ., 720 Fed. App'x 48, 51 [2d Cir. 2018]; F.O. v. New York City Dep't of Educ., 899 F. Supp. 2d 251, 254 [S.D.N.Y. 2012]; Patskin v. Bd. of Educ. of Webster Cent. Sch. Dist., 583 F. Supp. 2d 422, 428 [W.D.N.Y. 2008]; Student X v. New York City Dep't of Educ., 2008 WL 4890440, at *12 [E.D.N.Y. Oct. 30, 2008]; J.N. v. Depew Union Free Sch. Dist., 2008 WL 4501940, at *3-*4 [W.D.N.Y. Sept. 30, 2008]; see also Coleman v. Daines, 19 N.Y.3d 1087, 1090 [2012]; Hearst Corp. v. Clyne, 50 N.Y.2d 707, 714 [1980]).  In general, cases dealing with issues such as desired changes in IEPs, specific placements, and implementation disputes may become moot at the end of the school year because no meaningful relief can be granted (see, e.g., V.M. v. N. Colonie Cent. Sch. Dist., 954 F. Supp. 2d 102, 119-21 [N.D.N.Y. 2013]; M.S. v. New York City Dep't of Educ., 734 F. Supp. 2d 271, 280-81 [E.D.N.Y. 2010]; Patskin, 583 F. Supp. 2d at 428-29; J.N., 2008 WL 4501940, at *3-*4; but see A.A. v. Walled Lake Consol. Schs., 2017 WL 2591906, at *6-*9 [E.D. Mich. June 15, 2017] [considering the question of the "potential mootness of a claim for declaratory relief"]).  In most instances, a claim for compensatory education will not be rendered moot (see Mason v. Schenectady City Sch. Dist., 879 F. Supp. 215, 219 [N.D.N.Y. 1993] [demand for compensation to correct past wrongs

remains as a live controversy even if parents are satisfied with student's current placement]; see also Toth, 720 Fed. App'x at 51).[2]

Setting aside the question of whether the student should have been provided with pendency services by the district, here as set forth below I concur with the IHO that the student graduated in June 2020 and is no longer statutorily eligible for special education programs or related services. In doing so, I note that the Second Circuit has held that compensatory educational services may only be awarded to a student who is no longer eligible for special education by reason of age or graduation where the district has committed a gross violation of the IDEA, which resulted in the "denial of, or exclusion from, educational services for a substantial period of time" (see Doe v. E. Lyme Bd. of Educ., 790 F.3d 440, 456 n.15 [2d Cir. 2015]; French, 476 Fed. App'x at 471; Somoza, 538 F.3d at 109 n.2, 113 n.6; Mrs. C. v. Wheaton, 916 F.2d 69, 75 [2d Cir. 1990]; Garro v. State of Conn., 23 F.3d 734, 737 [2d Cir. 1994], citing Burr v. Sobol, 888 F.2d 258 [2d Cir. 1989], aff'g prior holding in Burr v. Ambach, 863 F.2d 1071 [2d Cir. 1988]). As discussed below, the evidence in the hearing does not support a finding of a gross denial of a FAPE in this matter, as throughout the time period at issue, the student was not excluded from receiving educational services for a substantial period of time, the student received educational benefits and obtained a Regents diploma from the district.

The student's most recent IEP dated November 2019, reflects that his transition course of study was to "complete the necessary coursework required for graduation with a Regents High School Diploma" (IHO Ex. III, Attachment 3 at p. 10). In support of its position on the appropriateness of the student's graduation, the district cites to the April 24, 2020 "Post-Secondary Student Exit Summary Report" (exit summary), which indicated that the student was anticipated to receive a Regents diploma in June 2020 (IHO Ex. V, Attachment 7). The exit summary reflected that the student was currently a senior, who presented as "courteous and age-appropriate," "kind and inquisitive," "respectful of his teachers and peers," "an active participant during classroom discussions and activities," and "a model student" (id. at p. 1). The present levels of performance indicated that the student's standardized academic achievement test scores were in the superior to very superior range, that he was currently taking two advanced placement classes along with his other courses, and that he planned to study either "biomedical or mechanical engineering" (id.). Comments regarding the student's study, math, reading, and writing skills reflected that he exhibited above-average skills, although at times he was "somewhat reluctant" to spend time on long-term projects, US History assignments, and chamber orchestra work; however, he did "complete those assignments usually with very little prompting" (id.). According to the exit summary, at times the student needed prompting to submit projects and assignments on time (id.). Specific to US History class, the student was reportedly "often quiet" and did "not participate in discussions" (id. at p. 2). In that class, the student's ability to complete homework in a timely

---

[2] In addition, a claim may not be moot despite the end of a school year for which the student's IEP was written, if the conduct complained of is "capable of repetition, yet evading review" (see Honig v. Doe, 484 U.S. 305, 318-23 [1987]; Toth, 720 Fed. App'x at 51; Lillbask, 397 F.3d at 84-85; Daniel R.R. v. State Bd. of Educ., 874 F.2d 1036, 1040 [5th Cir. 1989]). The "capable of repetition, yet evading review" exception applies only in limited situations (City of Los Angeles v. Lyons, 461 U.S. 95, 109 [1983]), and is severely circumscribed (Knaust v. City of Kingston, 157 F.3d 86, 88 [2d Cir. 1998]). It must be apparent that "the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration" (Murphy v. Hunt, 455 U.S. 478, 482 [1982]; see Knaust, 157 F.3d at 88). Given the student's graduation, this exception to the mootness doctrine is inapplicable.

manner was "inconsistent," and although he was able to demonstrate some of his knowledge on tests and quizzes, "homework completion affect[ed] his overall performance in the class" (id.).

The student's needs identified in the exit summary included that he needed to continue to work on completing all of his assignments, including those for less-preferred subjects, and submitting them in a timely manner (IHO Ex. V, Attachment 7 at p. 2). Additional needs included that the student prioritize daily assignments and manage his time related to the completion of those assignments, and create—with consistency and without prompting—a system/calendar for long term assignment completion and exam preparation (id.). Regarding social skills, the exit summary indicated that the student needed support to work on thinking flexibly about task completion and decreasing procrastination of undesirable tasks; such that he "may need to access the college counseling center to access this support" (id.). The exit summary reiterated the student's testing accommodations and program modifications/accommodations pursuant to his current IEP, noting that he did not use the testing accommodations (IHO Exs. III, Attachment 3 at pp. 11-13; V, Attachment 7 at p. 2).

The student's post-secondary goal included in the exit summary was that he would "attend a four year college which has a major or concentration in Biomedical/Mechanical Engineering," noting that he had been accepted to several four year colleges but at that time had not made the decision as to which he planned to attend (IHO Ex. V, Attachment 7 at pp. 2-3). To assist the student with this goal, it was recommended that he "set up an appointment with the Academic Resource Center at the college he [would] be attending to help him with time management and work completion strategies" (id. at p. 3). Additionally, recommendations for the student to meet his post-secondary employment goal of obtaining a job in the field of Biomedical/Mechanical engineering included that he "meet with his college counselor to ensure that he [was] taking a course of study that [would] meet the requirements of his chosen major" (id.). With regard to independent living skills, the exit summary indicated that "considering [the student's] interests, goals, and age appropriate levels of performance, independent living goals [were] not required at [that] time"; however, recommendations included that the student take on more responsibility at home and that he "work toward becoming an active member of the college community by joining clubs and expanding his interests" (id.).

The student's progress report for the time period ending on May 21, 2020 reflected that he was missing assignments in many of his courses, and his US History teacher reported that the student had "missed a majority of his assignments during virtual learning in the 4th quarter, he is now in danger of failing for the year. He should make up past due assignments" (IHO Ex. IV, Attachment L). In an email dated May 29, 2020 the parent requested that "[i]n light of [the student's] increased difficulties with submitting his assignments in a timely manner, and the school's early closing and conversion to remote learning, I would like to request for him a formal accommodation plan under both Section 504 and the IDEA" and proposed several accommodations related to the student's submission of missing work (IHO Ex. IV, Attachment Z at p. 1).

In a June 4, 2020 prior written notice, the district indicated that it would provide specific accommodations to the student "due to the unprecedented events of COVID-19" and the parent's request for accommodations (IHO Ex. V, Attachment 2). Specifically, the CSE agreed to provide the student and parent with a list of all missing work which would be updated weekly, provide the

9

student with an extension to complete all missing assignments, ensure that the student's grade for the assignments would be determined on the quality of the work submitted without penalty for lateness, and encourage the student to continue to attend all virtual classes, but would not penalize him for non-attendance (id.).

According to the parent, following a discussion with the student's guidance counselor and school psychologist, due to COVID-19 hardships, the parent agreed to allow the student to receive a "medical exemption" for the fourth marking period; as such, his final 2019-20 school year transcript would reflect "only his pre-pandemic grade point average" (IHO Ex. III, Attachment 2 at p. 15; see IHO Ex. IV, Attachment AA at p. 1). In an email to the principal dated June 19, 2020, the parent thanked staff for "considering [the student] for the medical exemption and for clarifying those terms" (IHO Ex. IV, Attachment AA at p. 2).

The student's high school transcript indicated that by the end of the 2019-20 school year, he had earned 25.50 credits including passing those courses required for a Regents diploma, and passed Regents examinations in Algebra 1, Living Environment, Global History, Chemistry, Algebra II, English language arts (ELA), and US History and Government (compare IHO Ex. III, Attachment 5, with IHO Ex. IV, Attachment CCC). Regarding the course in contention, US History, the student's transcript reflected that he had earned one credit for the course and achieved a final grade of C+ (IHO Ex. III, Attachment 5).

While the parent asserts that the district failed to address the problem the student had with "numerous missing assignments," which she argued was indicative that the student had failed to meet his IEP goals, whether or not a student masters IEP annual goals is not the determinative factor in whether the student is eligible to receive a high school diploma (IHO Ex. IV, Attachment CCC; see IHO III, Attachment 2 at pp. 13, 15, 16).[3] Although, at least one court has found that a student with a disability should not be graduated without the student meeting the general graduation requirements and making progress on or completing the student's IEP goals and objectives (Kevin T. v. Elmhurst Community Sch. Dist. No. 205, 2002 WL 433061, at *14 [N.D. Ill. Mar. 20, 2002], citing Chuhran v. Walled Lake Consol. Sch., 839 F. Supp. 465, 474 [E.D.Mich.1993], aff'd, 51 F.3d 271 [6th Cir.1995], the IDEA does not impose the additional requirement of progress on IEP goals and objectives on disabled students that is not imposed on non-disabled students in order to graduate with a regular high school diploma (Sammons v. Polk County Sch. Bd., 2005 WL 2484640, at *15 [M.D. Fla. Oct. 7, 2005], opinion clarified, 2005 WL 2850076 [M.D. Fla. Oct. 28, 2005]).

---

[3] To the extent the parent also argues that the student was erroneously awarded a diploma "notwithstanding his failure to demonstrate that he earned said diploma by mastering the performance learning standards in all curriculum areas," the accommodations the district provided to the student regarding missing work assignments and the medical exemption for the fourth marking period, contrary to the parent's assertions, do not conclusively evidence that the district "effactually modified the curriculum requirements for [the student] due to his disability" (compare IHO Ex. III, Attachment 2 at pp. 16, 17, with IHO Ex. IV, Attachment CCC; see IHO Exs. III, Attachment 2 at p. 15; IV, Attachment AA at p. 1; V, Attachment 2), particularly given the district's recognition of the unprecedented effects of the Covid-19 pandemic on in-person learning and the completion by the student of Regents examinations and other related requirements for a Regents diploma.

Additionally, while SROs have, at times, waded into the vicinity of confirming whether a student has met the State requirements to obtain either a Regents or local diploma, they must do so cautiously as the issuance of a diploma has historically been the province of the Commissioner of Education to consider the award of course credit and the related issuance or revocation of a diploma as a result (see, e.g., Appeal of K.D., 52 Ed Dept Rep, Decision No. 16,460), and generally, outside of instances where a student's graduation is a determinative factor as to the student's continuing eligibility for special education, an impartial hearing is not the proper forum for disputes involving a district's decision to award or its failure to award academic course credit because such hearings are limited to issues concerning the identification, evaluation, and educational placement of the student, or the provision of a FAPE to a student (20 U.S.C. § 1415[b][6]; 34 CFR. 300.507[a][1]; 8 NYCRR 200.5[i]; Application of the Bd. of Educ., Appeal No. 10-124; see Letter to Silber, 213 IDELR 110 [OSEP 1987] [responding to a series of questions posed by a parent on topics including classification and a local agency's rules regarding the accumulation of credits toward graduation and holding that the only issue amenable to an impartial hearing under federal law was whether the student should be classified]).  Further, graduation credits and requirements generally fall under the purview of the district's discretionary authority, again subject to the review of the Commissioner (see Educ. Law § 1709[3] [authorizing a board of education "to prescribe the course of study by which pupils of the schools shall be graded and classified, and to regulate the admission of pupils and their transfer from one class or department to another, as their scholarship shall warrant"]; Coleman v. Newburgh Enlarged City Sch. Dist., 503 F.3d 198, 205-06 [2d Cir. 2007] [opining that students do not have a right under the IDEA "to graduate on a date certain or from a particular educational institution"]; see also Kajoshaj v. New York City Dep't of Educ., 543 Fed. App'x 11, 17 [2d Cir. Oct. 15, 2013], citing Matter of Isquith v. Levitt, 285 App. Div. 833 [2d Dep't 1955] [finding that "[a]fter a child is admitted to a public school, the board of education has the power to provide rules and regulations for promotion from grade to grade, based not on age, but on training, knowledge and ability"]).

In this instance, the fact that the student may have been "at risk" of failing the US History course at one point in the school year due to missed assignments does not outweigh that the student earned a passing grade (C+) and one credit for the course, and achieved a 97 on the US History Regents examination (compare IHO Ex. III, Attachment 2 at pp. 13-14, with IHO Ex. III, Attachment 5).  Further, the parent acknowledges that the student's difficulty was "in his ability to turn in is work absent external cues—and not in his ability to master course content" (IHO Ex. III, Attachment 2 at p. 15).

Additionally, the parent admits that by June 12, 2020, the student "had already completed much of his missing assignments" and "was able to submit missing assignments and, thus, demonstrate mastery of the content of his graded courses" albeit with more "external" support than the parent preferred (IHO Ex. III, Attachment 2 at pp. 15-17).  Although the parent asserts that "absent extraordinary measures from other individuals to compensate for his deficits, he would have failed courses needed to fulfill the requirements of a diploma," the discretionary supports provided by the district did not contravene the student's IEP and, as tacitly acknowledged by the parent, did not constitute a modification of the substantive curriculum given the student still was required to – and objectively did – master the subject matter to the extent necessary to pass the US History class and the related Regents examination  (see IHO Ex. III, Attachment 2 at pp. 16, 17).

11

The parent also asserts that the district erroneously graduated the student even though he had "failed to demonstrate achievement of curriculum requirements rooted in the [Career Development and Occupational Studies] CDOS learning standards" (see e.g. IHO Exs. III, Attachment 2 at p. 17; IV, Attachment B at pp. 29-33). However, during the 2019-20 school year the student was pursuing a Regents diploma, and State guidance makes clear that once a student has earned a diploma the student may not continue to seek a CDOS credential thereafter (see IHO Exs. III, Attachment 3 at p. 10, Attachment 5; V, Attachment 7). To wit:

> May a student who has graduated with a high school diploma return to school to work toward the CDOS Commencement Credential?
>
> No. Receipt of a high school diploma ends a student's entitlement to free public education.

"New York State (NYS) Career Development and Occupational Studies (CDOS) Commencement Credential Questions and Answers," Office of Special Educ. Mem. [Sept. 2018] available at http://www.nysed.gov/common/nysed/files/programs/curriculum-instruction/cdos-pathwayq-9-18.ose_.pdf). Therefore, the parent's challenges to the student's graduation based on her position that the student failed to "demonstrate mastery" of the learning standards required for the CDOS credential would not in itself extend the student's right to a FAPE in this case (see IHO Ex. III, Attachment 2 at p. 17).

Therefore, in light of the above, the hearing record does not provide a basis to depart from the IHO's determination that "the student graduated from high school with a Regents diploma in June 2020 and is accordingly no longer eligible for special education" including compensatory education (IHO Decision at pp. 19-20).

### B. Pendency

The parent contends that the IHO erred in finding that the student was not eligible for pendency services because the parent has contested the student's graduation. Further, the parent contends that the IHO should have found that the student's pendency program consisted of the parent's privately obtained program of counseling, coaching, special instruction, and college-level courses because it was substantially similar to the remote learning implementation of the student's IEP at the time the parent invoked pendency before the close of the 2019-20 school year and prior to the student's graduation by the district. In the district's view, the IHO correctly determined that student's graduation precluded IDEA services under pendency, and also correctly determined that the November 2019 IEP would constitute the last agreed upon program for the purposes of pendency, but that the parent had "declined" to accept the services in the November 2019 IEP and instead pursued a suite of private post-high school education services.

The IDEA and the New York State Education Law require that a student remain in his or her then current educational placement, unless the student's parents and the board of education otherwise agree, during the pendency of any proceedings relating to the identification, evaluation or placement of the student (20 U.S.C. § 1415[j]; Educ. Law §§ 4404[4]; 34 CFR 300.518[a]; 8 NYCRR 200.5[m]; see Ventura de Paulino v. New York City Dep't of Educ., 959 F.3d 519, 531 [2d Cir. 2020]; T.M., 752 F.3d at 170-71; Mackey v. Bd. of Educ. for Arlington Cent. Sch. Dist.,

386 F.3d 158, 163 [2d Cir. 2004], citing Zvi D. v. Ambach, 694 F.2d 904, 906 [2d Cir. 1982]); M.G. v. New York City Dep't of Educ., 982 F. Supp. 2d 240, 246-47 [S.D.N.Y. 2013]; Student X v. New York City Dep't of Educ., 2008 WL 4890440, at *20 [E.D.N.Y. Oct. 30, 2008]; Bd. of Educ. of Poughkeepsie City Sch. Dist. v. O'Shea, 353 F. Supp. 2d 449, 455-56 [S.D.N.Y. 2005]). Pendency has the effect of an automatic injunction, and the party requesting it need not meet the requirements for injunctive relief such as irreparable harm, likelihood of success on the merits, and a balancing of the hardships (Zvi D., 694 F.2d at 906; see Wagner v. Bd. of Educ. of Montgomery County, 335 F.3d 297, 301 [4th Cir. 2003]; Drinker v. Colonial Sch. Dist., 78 F.3d 859, 864 [3d Cir. 1996]). The purpose of the pendency provision is to provide stability and consistency in the education of a student with a disability and "strip schools of the unilateral authority they had traditionally employed to exclude disabled students . . . from school" (Honig v. Doe, 484 U.S. 305, 323 [1987] [emphasis in original]; Evans v. Bd. of Educ. of Rhinebeck Cent. Sch. Dist., 921 F. Supp. 1184, 1187 [S.D.N.Y. 1996], citing Bd. of Educ. of City of New York v. Ambach, 612 F. Supp. 230, 233 [E.D.N.Y. 1985]). A student's placement pursuant to the pendency provision of the IDEA is evaluated independently from the appropriateness of the program offered the student by the CSE (Mackey, 386 F.3d at 160-61; Zvi D., 694 F.2d at 906; O'Shea, 353 F. Supp. 2d at 459 [noting that "pendency placement and appropriate placement are separate and distinct concepts"]). The pendency provision does not require that a student remain in a particular site or location (Ventura de Paulino, 959 F.3d at 532; T.M., 752 F.3d at 170-71; Concerned Parents & Citizens for the Continuing Educ. at Malcolm X Pub. Sch. 79 v. New York City Bd. of Educ., 629 F.2d 751, 753, 756 [2d Cir. 1980]; see Child's Status During Proceedings, 71 Fed. Reg. 46709 [Aug. 14, 2006] [noting that the "current placement is generally not considered to be location-specific"]), or at a particular grade level (Application of a Child with a Disability, Appeal No. 03-032; Application of a Child with a Disability, Appeal No. 95-16).

Under the IDEA, the pendency inquiry focuses on identifying the student's then current educational placement (Ventura de Paulino, 959 F.3d at 532; Mackey, 386 F.3d at 163, citing Zvi D., 694 F.2d at 906). Although not defined by statute, the phrase "then current placement" has been found to mean either: (1) the placement described in the student's most recently implemented IEP; (2) the operative placement actually functioning at the time when the due process proceeding was commenced; or (3) the placement at the time of the previously implemented IEP (Dervishi v. Stamford Bd. of Educ., 653 Fed. App'x 55, 57-58 [2d Cir. June 27, 2016], quoting Mackey, 386 F.3d at 163; T.M., 752 F.3d at 170-71 [holding that the pendency provision "requires a school district to continue funding whatever educational placement was last agreed upon for the child"]; see Doe v. E. Lyme Bd. of Educ., 790 F.3d 440, 452 [2d Cir. 2015] [holding that a student's entitlement to stay-put arises when a due process complaint notice is filed]; Susquenita Sch. Dist. v. Raelee, 96 F.3d 78, 83 [3d Cir. 1996]; Letter to Baugh, 211 IDELR 481 [OSEP 1987]). Furthermore, the Second Circuit has stated that educational placement means "the general type of educational program in which the child is placed" (Concerned Parents, 629 F.2d at 753, 756), and that "the pendency provision does not guarantee a disabled child the right to remain in the exact same school with the exact same service providers" (T.M., 752 F.3d at 171). However, if there is an agreement between the parties on the student's educational placement during the due process proceedings, it need not be reduced to a new IEP, and the agreement can supersede the prior unchallenged IEP as the student's then-current educational placement (see Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz, 290 F.3d 476, 483-84 [2d Cir. 2002]; Evans, 921 F. Supp. at 1189 n.3; Murphy, 86 F. Supp. 2d at 366; see also Letter to Hampden, 49 IDELR 197 [OSEP 2007]). Moreover, a prior unappealed IHO decision may establish a student's current educational

placement for purposes of pendency (Student X, 2008 WL 4890440, at *23; Letter to Hampden, 49 IDELR 197).

In addition, generally, the stay-put provision does not apply beyond expiration of the student's eligibility for special education due to age (see Bd. of Educ. of Oak Park & River Forest High Sch. Dist. 200 v. Ill. State Bd. of Educ., 79 F.3d 654 [7th Cir., 1996]; Cosgrove v. Bd. of Educ. of Niskayuna Cent. Sch. Dist., 175 F. Supp. 2d 375, 385-90 [N.D.N.Y. 2001]). However, courts have found that a student should remain in a stay-put placement in instances where one of the purposes of the pending proceedings is to challenge the factor which terminated the student's eligibility, i.e., to challenge the age limit on special education (see A.D. v. Hawaii Dep't of Educ., 727 F.3d 911, 915 [9th Cir. 2013] [finding that stay put applied for a student with a disability who challenged state-imposed age limits on IDEA eligibility, even though the student exceeded that age limit while the proceedings were pending]) or to challenge whether the disabled student met the requirements for graduation (see R.Y. v. Hawaii, 2010 WL 558552, at *6-*7 [D. Haw. Feb. 17, 2010] [noting that the right to stay put was not extinguished because the parents were challenging whether student was entitled to a regular high school diploma]; Tindell v. Evansville-Vanderburgh Sch. Corp., 2010 WL 557058, at *2-*4 [S.D. Ind. Feb. 10, 2010]; Cronin v. E. Ramapo Cent. Sch. Dist., 689 F. Supp. 197, [S.D.N.Y. 1988] [finding that stay put continued after the district graduated the student because the parents contended that that student had not attained the recommended targets established for him in the educational program]).

In light of the above, the IHO's caution with respect to the need for determining the student's pendency placement was warranted, and I find that the IHO's determination that the November 2019 IEP was the last agreed-upon placement for the student was correct (see IHO Decision at pp. 22-27). The parent does not dispute that the November 2019 IEP was the last agreed-upon placement for the student, rather the parent contends, in somewhat strained reasoning, that the district's graduation of the student after the parent invoked pendency in the June 2020 due process complaint notice "constituted the parties' mutual agreement to [the student's disenrollment at the district high school] so that his pendency placement must be provided elsewhere" (Req. for Rev. ¶¶ 18-19), and that the parent's private services were substantially similar to what would otherwise have been the student's pendency program.

However, as the IHO correctly points out, recent caselaw does not weigh in favor of unilateral pendency changes made by parents under a theory that a substantially similar private program must be funded by the district (IHO Decision at p. 27). Rather, the Second Circuit has found that "what a parent cannot do is determine that a child's pendency placement would be better provided somewhere else, enroll the child in a new school, and then invoke the stay put provision to force the school district to pay for the new school's services on a pendency basis," which is essentially what has happened here (Ventura de Paulino, 959 F.3d at 534). In the initial due process complaint notice dated June 4, 2020 and submitted June 9, 2020, prior to the end of the 2019-20 school year and the student's graduation, the parent asserted pendency and contended that she be allowed to choose the student's providers, enroll the student in a private college readiness and executive function program such as "Focus Collegiate" and have these services funded after the close of the school year under pendency and as compensatory education (see Parent Ex. A at pp. 15-16). None of the subsequent due process complaint notices requested that the district implement pendency in the district high school based upon the November 2019 IEP (see Parent Exs. B at pp. 24-25; C at pp. 24-25). The parent states that the district offered to fund some services

14

as a form of settlement, and the district's counsel appeared willing to discuss implementing pendency based upon the November 2019 IEP at the district's high school, but was confused as to whether the parent or the student wanted a return to the general education program in the district high school during the impartial hearing, after the student had passed all his senior year classes and qualified to graduate (see Tr. pp. 26, 54-57; see also Req. for Rev. ¶ 18).  In light of the above, I confirm the IHO's determination that the student's pendency consists of the services set forth in the November 2019 IEP as implemented during the 2019-20 school year and would potentially be available to the student should the parent wish to invoke pendency in the event there are further developments that result in this matter continuing in some other forum.

## VII. Conclusion

Having determined that the evidence in the hearing record supports finding that the student graduated in June 2020, the parent's claims concerning the 2017-18, 2018-19, 2019-20 and 2020-21 school years were moot, and having determined that the IHO correctly identified the student's pendency placement which was not accepted by the parent, the necessary inquiry is at an end.

I have considered the remaining contentions in this matter, including the parent's claim that the IHO erred in dismissing claims concerning the 2017-18 school year, and find it is unnecessary to address them in light of my determinations above.

**THE APPEAL IS DISMISSED.**


**Dated: Albany, New York**  
       **March 26, 2021**                                      _____  
                                                       **CAROL H. HAUGE**  
                                                       **STATE REVIEW OFFICER**